UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joshua Edward Carlson                               Civil No. 04-4732 (JNE/FLN)

    Petitioner,

v.                                                  **REPORT AND RECOMMENDATION**

Robert Feneis, Warden,
M.C.F. Rush City, Minnesota D.O.C.,

    Respondent.

_____

Joshua Edward Carlson, Pro Se Petitioner.
Kimberly Parker, Assistant Attorney General for the State of Minnesota, for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [#1]. This Court issued an Order directing the Respondent to Show Cause as to why Petitioner's Writ should not be granted [#3]. Respondent filed a response in opposition to Petitioner's petition, along with a supporting Memorandum and affidavits [#4, #5, #6]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends Petitioner's application be denied and dismissed with prejudice.

**I. BACKGROUND**

Petitioner, Joshua Edward Carlson, currently incarcerated at the Minnesota Correctional Facility at Rush City, Minnesota, was charged in Pine County, Minnesota District Court with second-degree murder on February 16, 2001, for shooting and killing his father, Richard Carlson.

(Appellant's Br. at 1).  Petitioner is currently serving a 306 month prison term.  (Id.).

The events that led to the Petitioner's conviction unfolded on January 29, 2001.  (Id. at 10). Petitioner lived with his father in Markville, Minnesota.  (Id. at 7).  Petitioner lived in a downstairs bedroom across the hall from the laundry room.  (Id. at 7).  Richard Carlson also owned a trailer which was located on his property about a block from the house.  (Id. at 7).  He rented the trailer to Kathy Brandt, with whom he had a social relationship.  (Resp't Br. at 3).  When Richard Carlson gave her a key to his house, he told Brandt, "mi casa es su casa."  (Appellant's Br. at 7).  Brandt frequently visited the Carlson home and even took care of household chores, often entering the house when Richard Carlson was not at home.  (Resp't Br. at 6).  She had also spent the night there on occasion.  (Id.).  Richard Carlson's daughter and son-in-law acknowledged that Brandt had permission to enter the home.  (Id.).

Brandt and Richard Carlson usually spoke daily.  (Appellant's Br. at 7).  Brandt last spoke to him on January 28, 2001.  (Id.).  When Brandt did not hear from Carlson for a few days and after several phone messages left for him were not returned, she became concerned.  (Id.).  About a week later, she noticed Petitioner driving Richard Carlson's truck and inquired as to whether Petitioner had heard from or had seen his father.  (Id.).  Petitioner told Brandt that he had not heard from his father.  (Id.).

On February 12, 2001, Corin Stansbury, Richard Carlson's daughter, contacted Pine County authorities to request an investigation.  (Id. at 8).  Within two hours, Sgt. Dwain Wilson of the Pine County Sheriff's Department arrived at Carlson's residence and Brandt let him in the house with her key.  (Id. at 9).

When Sgt. Wilson entered the home, he noticed a foul odor.  (Resp't Br. at 8).  Sgt. Wilson

then proceeded to perform a cursory search for both Richard Carlson and Petitioner in the upstairs part of the home and in the open rooms downstairs. (Id.). Upon searching the downstairs area, Sgt. Wilson noticed that the door to the laundry room was locked and a towel lying on the floor in front of the door appeared to have blood on it. (Id.). He went into Petitioner's room, found a screw driver and pried open the door to the laundry room. (Appellant's Br. at 9). Under a pile of blankets, he found Richard Carlson's body. (Id.).

Within hours, Petitioner was arrested by Pine County authorities. (Id.). On February 13, 2001, Investigator Matt Ludwig interviewed petitioner at the Burnett County Detention Center. State v. Carlson, No. C8-02-1955, 2003 WL 21961369, at *1 (Minn. Ct. App. Aug. 19, 2003). During the interview, Petitioner claimed that he had been awake the last five or six days taking methamphetamine. (Id.). Investigator Ludwig testified during the trial that he had experience observing people who are under the influence of drugs and people who are severely sleep deprived. (Id.). Ludwig testified that during the interview Petitioner did not behave as if he were sleep deprived nor did he act as if he were under the influence of drugs, or in any other condition that would prevent him from understanding his Miranda rights. (Id.). In addition, Ludwig testified that he believed petitioner gave appropriate answers to interview questions. (Id.). The interrogation was conducted as follows:

> Ludwig: You have the right to talk to a lawyer and have a lawyer present now or at anytime during questioning. Do you understand that?
>
> Appellant: Yes
>
> Ludwig: If you cannot afford a lawyer, one will be appointed for you without cost. Do you understand that?
>
> Appellant: Yea, but ah, where would the lawyer come from? Would it be Burnett or Pine?

>Ludwig: I don't know, that's up to you.
>
>Appellant: Well, doesn't the court appoint me one?
>
>Ludwig: Oh, that'll come..yeah that'll happen later. Or you know, I don't know ...
>
>Appellant: I don't have a lawyer.
>
>Ludwig: Well, do you want ... I mean you have the right to a lawyer here with you right now is what I'm saying.
>
>Appellant: Alright.
>
>Ludwig: Okay, you understand that? Okay, I don't wanna ... I want to make sure we're clear on that. You're nodding your head yes.
>
>Appellant: Yeah.
>
>Ludwig: Okay. Umm, having these rights in mind, will you just answer my questions now? I've been visiting with [Brandt], your neighbor. I'll tell ya. Okay and I have a pretty long history of what's been going on since around [January 28, 2001]. And I just kind of would like to hear your side of it so you know, do you want to tell me your side of the story now? We've been in the house.
>
>Appellant: I suppose.

(Id. at 3).

Ludwig concluded that Petitioner wished to give a statement. (Resp't Br. at 20). Petitioner then admitted killing his father on January 29, 2001. (Id.). Toward the end of the interrogation, Deputy Ludwig again reviewed Petitioner's Miranda rights:

>Ludwig: Okay, did you give me this statement of your own free will?
>
>Petitioner: Yes.
>
>Ludwig: You understood your rights at the time when you gave me this statement?
>
>Petitioner: Yes.

>Ludwig: What was that? There was some noise behind me?
>
>Petitioner: Yes.
>
>Ludwig: Okay, did I threaten you in any way?
>
>Petitioner: No.
>
>Ludwig: Okay. So you understand fully what's going on here?
>
>Petitioner: Pretty much.
>
>Ludwig: Okay. I'll ask you again. Is there anything you want to add to this statement?
>
>Petitioner: No.

(Id.).

In a contested pretrial Rasmussen hearing, conducted on May 31, 2001, Petitioner challenged the legality of the search, conducted by Sgt. Wilson, that resulted in the discovery of the victim and also challenged the admissibility of two statements that he gave to investigators on February 13, 2001. (Appellant's Br. at 1). On December 14, 2001, the Honorable James T. Reuter ruled that the search and interrogations were constitutional and denied the motions to suppress the evidence. (Id.). On May 31, 2002, after a bench trial, Judge Reuter found the Petitioner guilty as charged. (Id.). Petitioner was sentenced to serve a 306 month prison term on August 7, 2002. (Id. at 2).

On November 4, 2002, Petitioner filed a notice of appeal from the judgment of conviction with the Minnesota Court of Appeals. (Id.). In that appeal, Petitioner argued that the district court erred on three counts: 1) finding the initial search by Sgt. Wilson to be lawful and declining to suppress the evidence generated by that search; 2) ruling that petitioner had not invoked his right to counsel; and 3) ruling that he made a knowing voluntary, intelligent waiver of his Miranda rights. Carlson, 2003 WL 21961369, at *1.

On August 19, 2003, the Minnesota Court of Appeals unanimously affirmed Petitioner's conviction. Id. In affirming the district court's decision on the legality of the search, the Court of Appeals followed the standard of review articulated in State v. Licari: "When this court reviews the legality of a search, it will not reverse the district court's findings unless they are clearly erroneous or contrary to the law." Carlson, 2003 WL 21961369, at *2, citing, State v. Licari, 659 N.W.2d 243, 250 (Minn. 2003).

Applying this deferential standard of review to the facts of the case, the Court of Appeals found that the district court did not err in declining to suppress the evidence of the search. Id. As to the Petitioner's claim that he had invoked his right to counsel, the Court of Appeals also applied a deferential standard of review. Id. at 3. "This court defers to a district court's factual determination of whether a defendant invokes the right to counsel during an interrogation unless that determination is clearly erroneous." Id. at 3, citing, State v. Bradford, 618 N.W.2d 782, 796 (Minn. 2000)). Using this standard, the court again found support in the record for the district court's assertion that the appellant "never even ambiguously invoked his right to counsel" and affirmed the lower court's decision since it was not clearly erroneous. Carlson, 2003 WL 21961369, at *4.

The Court of Appeals also affirmed the lower court's decision that the Petitioner made a knowing, voluntary and intelligent waiver of his Miranda rights. Id. at *6. Again, the court cited relevant case law that dictated a deferential standard of review only allowing for reversal when the findings of fact surrounding the giving of the statement are clearly erroneous. Id. at * 4, citing, State v. Williams, 535 N.W.2d. 277, 286 (Minn. 1995). The Court of Appeals also added that it would make "an independent determination, on the basis of the facts as found, of whether the state has shown by a fair preponderance of the evidence that the suspect's waiver was knowing, intelligent,

and voluntary. Carlson, 2003 WL 21961369, at *4, citing, State v. Hannon, 636 N.W.2d 796, 806 (Minn.2001).

In finding the district court's determination that the petitioner had waived his Miranda rights not clearly erroneous, the appellate court pointed to facts in the record that showed that the petitioner was fully informed of his Miranda rights and that he "did not exhibit the behavior of someone who could not understand the Miranda rights." Carlson, 2003 WL 21961369, at *5.

The Court of Appeals also rejected Petitioner's claim that his waiver of his Miranda rights was not voluntary. Petitioner relied on Hannon, 636 N.W.2d 796, to argue that Investigator Ludwig asked questions designed to improperly induce a waiver of Petitioner's Miranda rights. Carlson, 2003 WL 21961369, at *5. (See also Appellant's Br. at 30). In rejecting that claim, the appellate court distinguished the instant case from Hannon because Investigator Ludwig did not suggest that Petitioner would be disadvantaged by invoking his right to counsel, unlike the police in Hannon, and that Investigator Ludwig was merely inviting Petitioner to tell his side of the story. Carlson, 2003 WL 21961369, at *6.

After the Court of Appeals unanimously affirmed Petitioner's conviction on August 19, 2003, Petitioner again appealed. The Minnesota Supreme Court denied his petition for review on October 29, 2003.

The current petition for habeas corpus also makes three claims: 1) that the Petitioner's conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure; 2) that Petitioner's conviction was obtained by a violation of both the privilege against self incrimination and also his right to counsel; and 3) the judgment of the Minnesota Court of Appeals was improper due to the seating of an ineligible judge. (Pet'r Br. at 1).

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standards that govern this Court's review of habeas corpus claims raised by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court held that:

> A state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours....
>
> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

(Id., at 405, 413). The Court further explained the "unreasonable application" clause:

> A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

(Id., at 409, 411).

A writ of habeas corpus may also be available where the state court's resolution of a case is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, a "federal court...presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000).

Needless to say, a federal district court is not allowed to conduct its own de novo review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in Williams.

### III. DISCUSSION

The petition for habeas corpus relief must be denied. Petitioner has not overcome the procedural hurdles to habeas relief, nor has he demonstrated that the Minnesota state courts made any unreasonable factual determinations in light of the evidence presented. It is for these reasons the petition fails.

**A.      Petitioner's Fourth Amendment Claim Is Procedurally Barred**

Petitioner's first claim is that the initial search leading to the discovery of the body of Richard Carlson was unconstitutional and that the evidence found should have been suppressed. Petitioner contends that both the Minnesota district court and the Minnesota Court of Appeals erred in declaring the fruits of the search admissible. (Pet'r Br. at 1).

According to Stone v. Powell, 428 U.S. 465 (1976), such a claim alone does not mandate that this court grant relief. In Stone, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494. The Eighth Circuit relied on Stone when it ruled on this issue in Poole v. Wood, 45 F.3d 246 (8th Cir. 1995). The holding in Poole states that: "Fourth Amendment claims may not be raised in a petition for habeas corpus when the state has afforded the petitioner a full and fair opportunity to litigate those claims." 45 F.3d at 249, citing, Stone, 428 U.S. 465 (1976).

Unless "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system," the requirement of an opportunity to litigate is satisfied. Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994). A federal court is not to review a state court's records to determine if the state's factual findings are fairly supported by the record. See Id. at 1270.

Petitioner does not contend that he was denied a full and fair opportunity to litigate the Fourth Amendment issues in the state court system. Indeed his petition is silent with respect to this

procedural bar issue. The procedural history of his case, however, demonstrates that Petitioner indeed litigated the Fourth Amendment issue. Petitioner moved to suppress the fruits of the search on May 31, 2001, at a contested Rasmussen hearing before state District Judge James T. Reuter. He pursued this Fourth Amendment claim in his post-conviction appeal to the Minnesota Court of Appeals. After the Court of Appeals affirmed the conviction, Petitioner appealed to the Minnesota Supreme Court, which denied review.

Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims through the judicial process in the state courts of Minnesota. The district court and the Minnesota Court of Appeals both determined that no violation of the Fourth Amendment occurred. Stone v. Powell, supra, precludes further review of that issue in this habeas corpus proceeding.

**B.     The Petitioner Waived Both His Right To Counsel As Well As His Miranda Rights.**

Petitioner's second claim that his conviction was obtained by a violation of his privilege against self incrimination, actually conflates two claims: 1) that he did not waive his right to counsel and 2) that his waiver of his Miranda rights was not intelligent, knowing or voluntary. (Pet'r Br. at 9). In light of the factual record in this case, and the Court's deference to state court decisions mandated by 28 U.S.C. § 2254, both claims fail.

The factual record surrounding both claims was completely developed at Petitioner's Rasmussen hearing on May 31, 2001. Using that record, the Minnesota Court of Appeals deferred to the finding of the district court that Petitioner "never even ambiguously invoked his right to counsel." Carlson, 2003 WL 21961369, at *4. The appellate court reasoned that:

> Appellant was told that he had a right to an attorney and indicated that he understood that right. Appellant's inquiry regarding where the lawyer would come from is not a clear and unequivocal request for counsel, but "simply a question about where an attorney might come from." The question was "a logical [one,] given that the

> interview was conducted in Burnett County and crime was committed in Pine County." When Ludwig attempted to clarify appellant's question, he repeated that appellant had a right to an attorney and again asked if appellant understood that right. Appellant responded by saying "yeah." When Ludwig asked appellant, "having these rights in mind * * * just answer [his] questions," Appellant proceeded to do so.
>
> The court went on to find that even though Ludwig's comment, "Oh, that'll come . . .yeah that'll happen later," in response to appellant's question as to whether the court appoints him an attorney was in error, Ludwig also "rightfully clarified to [appellant] 'you have a right to a lawyer here with you right now.'"

Id.

Under 28 U.S.C. § 2254's presumption of correctness, discussed above, this Court is to presume a state court's finding of facts to be correct. See Crespo v. Armontrout, 818 F.2d 684, 686 (8th Cir. 1987). Based on the full factual record, this Court cannot conclude that the factual determinations made at the state level resulted in a decision that was either contrary to federal law or an unreasonable determination of the facts in light of the evidence. As such, this Court is to defer to the state courts' determinations and must deny habeas relief.

Applying the same standard to the Miranda question, the determination that the Petitioner knowingly, intelligently and voluntarily waived his Miranda rights must also stand. Petitioner claims that the trial and appellate courts failed to consider his "low intelligence" and his "inability to comprehend what was being explained to him" in determining that he had waived his Miranda rights. (Pet'r Br. at 8). However, Investigator Ludwig specifically testified that Petitioner's behavior during the interview with investigators was not consistent with that of someone under the influence of drugs or so deprived of sleep so as not to understand his Miranda rights. Ludwig also testified that the Petitioner made appropriate responses and inquiries during the interview, and "did not exhibit the behavior of someone who could not understand the Miranda rights." Carlson, 2003 WL 21961369, at *5. In fact, on three different occasions, Petitioner responded affirmatively to

investigators asking if he understood his Miranda rights. Additionally, evidence introduced at trial established that the Petitioner's learning disabilities, present when younger, had largely dissipated by the time he reached high school. In light of this evidence, this Court concludes that the decision of the Minnesota state courts that Petitioner knowingly, intelligently and voluntarily waived his Miranda rights was not unreasonable. As such, this court must deny habeas relief on this claim as well.

C.   **Petitioner Fails to Present A Federal Question With Respect To The Composition Of Court Of Appeals.**

Petitioner's final claim asserts that the decision of the Minnesota Court of Appeals should be vacated "because the author of the opinion is a retired judge who has been acting regularly as an appellate judge without having been elected as required by the Minnesota Constitution." (Pet'r Br. at 9). Although this claim seems on its face to be without merit,[1] it is also barred from being heard in this forum because it fails to place a federal question before the court.

Federal Habeas Corpus relief is available only on behalf of a person in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); Estelle v. McGuire 502 U.S. 62, 68 (1991). Petitioner's claim to this Court does not raise a federal question. His one sentence claim in his petition asks this Court to vacate the Court of Appeals decision "because the author of the opinion is a retired judge who has been acting regularly as an appellate judge without having been elected by the Minnesota Constitution." (Pet'r Br. at 9). Nothing resembling a claim arising out of federal law or the United States Constitution is presented here. Instead, Petitioner only

---

[1] The plain language of the Minnesota Constitution explicitly permits retired judges to be appointed to preside over cases. "As provided by law a retired judge may be assigned to hear and decide any cause over which the court to which he is assigned has jurisdiction." Minn. Const. Art VI. § 10.

alleges a violation of the Minnesota State Constitution. Moreover, Petitioner's argument is merely a conclusory allegation. He supplies no relevant case law to support any claim that the state acted improperly or contrary to law. In petitions for habeas relief, claims that are merely conclusions are not sufficient. Schlette v. California, 284 F.2d 827, 833 (9th Cir. 1960); see also Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) (stating that mere conclusions of violation of federal rights in a federal habeas petition without specifics do not state a basis for habeas corpus relief).

In Baldwin v. Reese, 124 S. Ct. 1347 (Mar. 2, 2004), the Supreme Court held that a petition for writ of habeas corpus was properly denied where a petition for review did not raise a federal claim to the Oregon Supreme Court. Id., at 1351-52. Likewise, Petitioner's appeal to the Minnesota Supreme Court in this case clearly establishes that to the extent he makes a claim, it is one that arises entirely out of Minnesota law. That brief asks the Minnesota Supreme Court to "determine whether the seating of the retired judge violated the state constitution." It does not claim that it is a question of federal law and does nothing to put the Minnesota Supreme Court on notice of any potential federal claim arising out of the composition of the appellate panel. Under Baldwin v. Reese, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so." 124 S. Ct. at 1351. In the absence of a federal claim, this Court is without power to review a state court's determination of state law and must deny Petitioner habeas corpus relief on final claim as well.

## V. RECOMMENDATION

Based on all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [#1] be **DENIED**, and that this action be

**DISMISSED WITH PREJUDICE**.


DATED: July 22, 2005.                              s/ *Franklin L. Noel*
                                                   FRANKLIN L. NOEL
                                                   United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 10, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.